**STATE of Minnesota, Respondent,**

v.

**Leon John BUDKE, Appellant.**

**No. C8–85–475.**

Court of Appeals of Minnesota.

Aug. 20, 1985.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Michael L. Kirk, Ottertail County Atty., Fergus Falls, for respondent.

C. Paul Jones, Public Defender, Heidi H. Crissy, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Leon Budke appeals from two convictions for burglary in the second and third degree in violation of Minn.Stat. § 609.582, subds. 2 and 3. Budke waived a trial by jury and allowed the court to make a determination of guilt based upon the omnibus hearing record. Budke contends that his confession is inadmissible because it was given in a custodial setting without a *Miranda* warning and because it was involuntary. In addition, he contends that the tangible evidence obtained as a result of the confession is inadmissible. We affirm.

## FACTS

The two burglaries in this case were committed on separate dates. The first burglary occurred at the Maple Leaf Resort, where a brass antique cash register containing about $30 in cash, some change, and checks totaling $23 were taken. The second burglary occurred nine days later at the Ledding residence, where several pieces of stereo equipment were taken.

Investigator Gary Waskosky of the Ottertail County Sheriff's Office inquired of other deputies to see if they had any idea who might have committed the crimes. Two names were given to him—Leon

Budke and Jody Burns. With that information, Waskosky checked for vehicle tracks at the Burns residence and observed tracks similar to those found at the Maple Leaf Resort. Approximately one week after he had been told Budke and Burns might have been involved, Waskosky went to the Underwood High School, where both suspects were students.

Waskosky contacted the school principal first to find out if the students were 18 years old, which they were, and at Waskosky's request, Budke was asked to come to the principal's office. When Budke arrived the principal introduced him to Waskosky and left them alone in the office. Waskosky told Budke that he would like to talk to him about some things he and Jody Burns were possibly involved in. Budke was also advised that he was not under arrest, that he was free to leave at any time, and that he did not have to talk to him if he did not want to. Budke was not given a full *Miranda* warning.

Budke testified at the omnibus hearing that he did not remember whether he had been told he was free to leave. He did remember that he had been told he was not under arrest, although he believed that if he refused to answer Waskosky's questions or if he attempted to leave the office, he would be arrested.

During the conversation Budke confessed to Waskosky that he and Jody Burns had entered the Ledding home and had taken stereo equipment from it. Waskosky then advised Budke that if he brought the stereo equipment to the Law Enforcement Center by 4:30 that same day, he would not be arrested but would instead receive a summons.

Waskosky next questioned Burns, who confessed that in addition to the Ledding burglary, he and Budke were involved in the Maple Leaf Resort burglary. Waskosky then spoke with Budke a second time, and Budke admitted his involvement in the Maple Leaf Resort burglary as well.

Budke testified that he and Waskosky shook hands and had a friendly conversation. Budke confirmed that at no time during the questioning did Waskosky threaten or coerce Budke into making a confession.

Budke left at the conclusion of the questioning and returned the stereo equipment later that afternoon. Waskosky recovered the cash register in the location specified by Budke and Burns.

## ISSUES

1. Was Budke's confession, made in a high school principal's office without a prior *Miranda* warning, inadmissible as a violation of his rights under the fifth and fourteenth amendments to the United States Constitution?

2. Was Budke's confession voluntary?

3. Was the tangible evidence recovered as a result of the confession admissible?

## DISCUSSION

### I

■ Budke confessed to violating Minn. Stat. § 609.582, subds. 2 and 3 (1984), defining burglary in the second and third degree. Budke contends the trial court erred in denying his motion to suppress the confessions because he was not given a *Miranda* warning before he confessed to the crimes. The test for determining the need for a *Miranda* warning "is not whether the interrogation has coercive aspects to it or whether the investigation has focused on the person being questioned, but whether the person being questioned is in custody or is deprived of his freedom of action in any significant way." *State v. Palm*, 299 N.W.2d 740, 741 (Minn.1980).

In *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977), the United States Supreme Court explained the reasoning behind the test:

[A] noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement the questioning took place in a "coercive environment." Any interview of

one suspected of a crime by a police officer will have coercive aspects to it simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom to render him "in custody." It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable and to which it is limited.

In *Mathiason* the person interrogated came voluntarily to the police station in response to a request by the police, who suspected him of having committed a burglary. The court held that a *Miranda* warning was not required because he was not in custody.

Custody, for *Miranda* purposes, has recently been more narrowly circumscribed. In *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984), the United States Supreme Court, reversing the Minnesota Supreme Court decision, held that a probationer was not "in custody" when he gave incriminating answers to questions asked by his probation officer, even though it was during a meeting which he was required to attend under the terms of his probation. Under the standard appropriate in the *Miranda* context, the court determined that Murphy was not "in custody" since "there was no formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* at 1144; *see California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983) (per curiam) (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714).

Budke argues that he was in custody while Waskosky questioned him. Budke contends that by deliberately questioning him at the high school, Waskosky cloaked the interrogation with the school's restrictions of freedom of movement, compelling Budke to believe that compliance with Waskosky's request was necessary or punishment would be forthcoming.

In *Murphy* the United States Supreme Court found similar arguments insufficient to support a finding of custody for *Miranda* purposes. Specifically, the court found insufficient the fact that the probation officer could compel Murphy's attendance and truthful answers. *Murphy*, 104 S.Ct. at 1144.

■ Budke, like Murphy, was not under arrest and was free to leave at the conclusion of the questioning. The principal's office could be no more restrictive than the probation officer's office in *Murphy* or the police station in *Mathiason*. Under the standard of custody for *Miranda* purposes, Budke was not in custody during questioning because the restrictions placed on him do not amount to "restraint on freedom of movement associated with formal arrest." *Murphy*, 104 S.Ct. at 1139.

II

■ Budke argues that his confession was involuntary because it was coerced and therefore inadmissible. In *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), the United States Supreme Court recognized "that noncustodial interrogation might possibly in some special circumstances, be characterized as one where 'the behavior of * * * law enforcement officials was such as to overbear petitioner's will to resist and bring about confession, not freely determined * * *.' " *Id.*, 425 U.S. at 348, 96 S.Ct. at 1617 (quoting *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961)). When such a claim is raised, it is the duty of an appellate court "to examine the entire record and make an independent determination of the ultimate issue of voluntariness." *Davis v. North Carolina*, 384 U.S. 737, 741–42, 86 S.Ct. 1761, 1764–65, 16 L.Ed.2d 895 (1966).

■ To be voluntary "a confession must not be extracted by any sort of threat or violence or obtained by direct or implied promises." *Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964); *State v. Orscanin,* 283 N.W.2d 897, 899 (Minn.1979), *cert. denied,* 444 U.S. 970, 100 S.Ct. 464, 62 L.Ed.2d 385 (1979).

■ Budke claims that Waskosky coerced him into making an inculpatory statement when Waskosky threatened him with arrest. Budke argues that although Waskosky's suspicion was based upon speculation, he informed Budke that he had sufficient evidence to arrest him at any time.

Although Budke's testimony is conflicting as to whether Waskosky mentioned arrest before or after the confession, the record shows the trial court could reasonably believe Budke's initial testimony that arrest was mentioned after the confession. In *State v. Merrill,* 274 N.W.2d 99 (Minn. 1978), the Minnesota Supreme Court reviewed statements of police officers designed to encourage the defendant to talk by informing him about the evidence against him and possible charges. The court stated that police must "be allowed to encourage suspects to talk where the suspect has not clearly refused." *Id.* at 108.

The record shows no evidence of violence or direct or implied promises calculated to induce the confession. *Cf. State v. Biron,* 266 Minn. 272, 123 N.W.2d 392 (1963) (involuntary confession when induced by promises of special treatment). Budke testified that his conversation with Waskosky was friendly and non-coercive. The record shows that the trial court did not err in determining that the confession was free of coercion, voluntary and therefore admissible.

### III

Budke argues that the trial court erred in refusing to suppress the stereo equipment and cash register because this evidence was recovered as a result of an illegally obtained confession. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because we hold that the confession was obtained legally, we need not address this argument.

■ In addition, Budke argues that the stereo equipment is inadmissible because its recovery was due to an abuse of the discretionary police power to arrest. Budke argues that after his first interrogation, Waskosky had probable cause to arrest but instead used the discretionary power as leverage to force Budke to produce incriminating evidence.

Minn.R.Crim.P. 6.01, subd. 2, outlines the procedure whereby citations may be issued in lieu of warrantless arrests for gross misdemeanors and felonies:

When a law enforcement officer acting without a warrant is entitled to make an arrest for a felony or gross misdemeanor is brought to a police station or county jail, the officer in charge of the police station or the county sheriff in charge of the jail or an officer designated by the sheriff *may issue a citation in lieu of arrest* or in lieu of continued detention if an arrest has been made, *unless* it reasonably appears to the officer the arrest or detention is necessary to prevent bodily harm to the accused or another or further criminal conduct or that the accused may fail to appear in response to the citation.

*Id.* (emphasis added).

Under the facts of this case, Waskosky's decision not to arrest Budke at the time of questioning was proper. There is no evidence that Budke's arrest was necessary to prevent bodily harm or further criminal conduct or that Budke might fail to appear in response to the citation. *See State v. Brown,* 345 N.W.2d 233 (Minn.1984). Waskosky acted properly and commendably within the rule affording him discretion to avoid Budke's arrest under the circumstances. *See State v. Gard,* 358 N.W.2d 463, 468–69 (Minn.Ct.App.1984).

### DECISION

Budke's confession was not obtained in violation of his constitutional rights and

was properly admitted. Similarly, the tangible evidence recovered as a result of the confession was properly admitted.

Affirmed.