**STATE of Minnesota, Appellant,**

v.

**Jackie Dean SPENCER, Respondent.**

**No. C5–87–1409.**

Court of Appeals of Minnesota.

Nov. 3, 1987.
Review Denied Dec. 22, 1987.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Robert A. Stanich, Sp. Asst. Attys. Gen., St. Paul, for appellant.

C. Paul Jones, State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for respondent.

Considered and decided by WOZNIAK, P.J., and FOLEY and CRIPPEN, JJ., without oral argument.

## OPINION

FOLEY, Judge.

Respondent Jackie Dean Spencer was charged with possession of an unauthorized electrical device on licensed racetrack premises. After an evidentiary hearing on the admissibility of the electrical device and of certain statements made by Spencer to racetrack security personnel, the trial court found the electrical device and one of the statements to be admissible evidence, but suppressed all other statements made by Spencer. The state filed this pretrial appeal pursuant to Minn.R.Crim.P. 28.04, subd. 1. We reverse.

## FACTS

On September 10, 1986, Minnesota Racing Commission Director of Security Patrick Shannon and Canterbury Downs Director of Security Timothy Thompson conducted a search of the jockeys' quarters at Canterbury Downs. During the search, Scott Harr, an investigator with Canterbury Downs Track Security (CDTS), a private company, found a rectangular object about three inches in length, wrapped in black electrical tape, with two metal prongs sticking out of one end of it, which was later identified as an electrical device used to shock horses. Harr found the object inside a locker in a maroon leather bag. There was no identification on the locker or on the maroon bag, but in the area immediately surrounding the bag Harr found a long white strap that had "J. Spencer" written on it. Above the bag was a jockey's cap labeled "Spencer." Harr turned to a jockey standing near him and asked, "Whose area is this?" The jockey told Harr the owner was in the other room. Harr asked the jockey to bring the owner into the jockeys' quarters. The owner entered the quarters and introduced himself as J.D. Spencer. Spencer told Harr the locker and maroon bag were his. Harr then identified himself as an investigator with CDTS but did not place Spencer under arrest.

CDTS Officer Thomas Wagner arrived at the jockeys' quarters in response to Harr's request for assistance. Wagner asked Spencer to go with him to the security office, and Spencer agreed. Spencer was not placed under arrest, nor was he read a *Miranda* warning. On their way to the security office, Wagner and Spencer had a casual conversation. Wagner asked Spencer what was wrong, and he replied, "Something big." While in the security office, Wagner asked Spencer what was in the maroon bag, and he replied, "A machine." When asked what it was used for, Spencer replied, "For a horse that doesn't want to run."

Harr went to the security office to fill out his report. He asked Spencer his name, his home address, and where he was staying. Spencer responded to those questions, and also "talked quite a bit," even though Harr did not ask him any additional questions. Spencer told Harr the electrical device was his. Spencer also told Harr the device cost him $80 and he should have hidden it like he usually did. When Harr asked Spencer what the device was, he replied, "A machine." At no time did Harr read Spencer his *Miranda* rights.

A short time later a taped interview was conducted. Present during the interview were Spencer, Directors Thompson and Shannon, and a representative of the Jockey Guild. Spencer was not given a *Miranda* warning. Shannon introduced himself to Spencer and explained who he was and that he wanted to know about the electrical device found in the jockeys' quarters. Spencer agreed to talk on tape. During the interview, Spencer informed them the device was a machine used to shock a horse so it will run faster. Spencer also admitted the device was his. After the interview, Spencer left the office.

The next day Spencer was arrested for violating the following statutes:

Subd. 4. **Tampering with horses.** No person may:

(a) on the premises of a licensed racetrack use, *possess*, or knowingly assist another person in using a battery or buzzer, electrical or mechanical, or other device or appliance, which can be used to affect a horse's racing condition or performance, other than an ordinary whip;

Minn.Stat. § 240.25, subd. 4(a) (1986) (emphasis added).

240.26 **PENALTIES.**

Subdivision 1. **Felonies.** * * * a violation of section 240.25, subdivisions 3, 4, and 7 is a felony.

Minn.Stat. § 240.26, subd. 1 (1986).

■ At the omnibus hearing, the trial court found that from the point Spencer was confronted by Harr and asked to accompany Wagner to the security office, Spencer was "in custody." The trial court held the electrical device and Spencer's statements to Harr in the jockeys' quarters

were admissible evidence but suppressed all other statements.[1]

### ISSUES

1. Was Spencer "in custody" within the meaning of *Miranda* when he made statements regarding ownership of the illegal device?

2. Has the state clearly and unequivocally shown the trial court erred in suppressing Spencer's statements, and the error will have a critical impact on the outcome of the trial?

### ANALYSIS

In a pretrial appeal, a reviewing court will reverse only if the state demonstrates clearly and unequivocally that the trial court erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987).

1. Under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), warnings are required only for *custodial* interrogations, which are defined as "questioning initiated by law enforcement officers after a person has been *taken into custody or otherwise deprived of his freedom of action in any significant way.*" *Id.* at 444, 86 S.Ct. at 1612 (emphasis added). In *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the United States Supreme Court held:

*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Id.* at 495, 97 S.Ct. at 714 (emphasis in original). While the circumstances of each case influence a determination of whether a suspect is "in custody" for purposes of receiving *Miranda* protection, the "ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. at 495, 97 S.Ct. at 713–14).

The trial court did not find that Spencer was in custody when he made the first statement to Harr regarding the ownership of the locker area where the electrical device was found, so we are concerned only with the other three statements Spencer made during the investigation.

### a. *Second statement*

■ When Wagner arrived at the jockeys' quarters, he asked Spencer to accompany him to the security office, and Spencer agreed. Wagner did not place Spencer under arrest. Nothing was said about Spencer's freedom to go or not to go. Spencer argues that because Wagner was a

---

1. Spencer moved to strike the state's reply brief on the ground that, given the time limitations that govern a state pretrial appeal, the rules do not contemplate a reply brief. Minn.R.Crim.P. 28.04, subd. 2(3) provides:

  (3) *Briefs.* Within fifteen (15) days of delivery of the transcripts, appellant shall file his brief with the clerk of the appellate courts together with proof of service upon the respondent. Within 8 days of service of appellant's brief upon him the respondent shall file his brief with said clerk together with proof of service upon the appellant. *In all other respects the Minnesota Rules of Civil Appellate Procedure to the extent applicable govern the form and filing of briefs* and appendices except that the appellant's brief shall contain a statement of the procedural history.

(Emphasis added.) Minn.R.Civ.App.P. 128.02, subd. 3 provides:

  The appellant may file a brief in reply to the brief of the respondent. The reply brief must be confined to new matter raised in the brief of the respondent.

Minn.R.Civ.App.P. 131.01 provides in part:

  The appellant may serve and file a reply brief within five days after service of respondent's brief.

  Applying the plain language of Minn.R.Crim. P. 28.04, subd. 2(3), a reply brief is permissible in this case. However, the reply brief must only address new matter raised in Spencer's brief. Part I of the state's reply brief is not a reply to new matter raised in Spencer's brief and therefore that portion of the reply brief was stricken and not considered in the determination of this case.

uniformed security officer and is six foot two and weighs 225 pounds, while he is only five foot seven and weighs 120 pounds, he reasonably believed that his freedom of action was restricted.

> [T]he test for determining the need for a *Miranda* warning is not whether the interrogation has coercive aspects to it or whether the investigation has focused on the person being questioned, but whether the person being questioned is in custody or is deprived of his freedom of action in any significant way.

*State v. Herem,* 384 N.W.2d 880, 884 (Minn.1986) (quoting *State v. Palm,* 299 N.W.2d 740, 741 (Minn.1980)). Spencer's argument shifts the focus of the inquiry from whether he was in custody or deprived of his freedom of action in any significant way to whether it was reasonable for him to believe his freedom was restricted given the relative sizes of the two men and the fact that Wagner was uniformed and thus is misdirected.

In *Mathiason,* the person being interrogated came voluntarily to the police station *in response to a request by the police,* who suspected him of having committed a burglary. *Id.* 429 U.S. at 493, 97 S.Ct. at 713. The court held that a *Miranda* warning was not required because he was not in custody. *Mathiason,* 429 U.S. at 496, 97 S.Ct. at 714. In *State v. Larson,* 346 N.W.2d 199 (Minn.Ct.App.1984), this court held the "presence of uniformed officers at [defendant's] home was not enough of a restraint on his freedom of movement to bring the questioning under *Miranda.*" *Larson,* 346 N.W.2d at 201.

Furthermore, Wagner was not acting as a licensed police officer, but rather as a security officer for a privately owned security company.[2] Wagner's only authority to place Spencer under arrest was as a citizen.

#### b. *Third statement*

Spencer was waiting in the security office when Harr came in and started to fill out his report. Harr asked Spencer some general background questions, which he answered, and then Spencer continued to talk even though he was not being questioned. Spencer had not been placed under arrest. He was not being interrogated. Harr was not acting as a licensed peace officer but as an investigator for CDTS. The fact that Spencer's statement took place in the security office does not, in and of itself, render it a custodial statement. *See Mathiason,* 429 U.S. at 495, 97 S.Ct. at 713–14 (*Miranda* warnings are not required simply because the questioning takes place in the station house). *See also Herem* (questioning in squad car not custodial); *State v. Marhoun,* 323 N.W.2d 729 (Minn.1982) (questioning at BCA headquarters where defendant went voluntarily and was told he was free to leave not custodial).

#### c. *Fourth statement*

The taped interview was conducted in the security office by Shannon, who is not a licensed peace officer, but is the director of security for the Minnesota Racing Commission. Spencer was not told that he did not have to give a statement. In fact, under the rules of the Minnesota Racing Commission, Spencer was required to cooperate whenever he was under investigation by providing a statement. The penalty for failure to cooperate is a loss of license.

In *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), Murphy was on probation for a previous offense. The terms of his probation required, among other things, that he report to his probation officer and be truthful with the probation officer in all matters. *Id.* at 422, 104 S.Ct. at 1139–40. The Unit-

---

**2.** In *State v. Makela,* 309 N.W.2d 295 (Minn. 1981), Makela was questioned by private security personnel in the presence of police. However, the issue of whether private security personnel questioning a suspect in the presence of police must follow the requirements of *Miranda* was not decided because the questioning in that case was noncustodial questioning to which *Miranda* rights do not apply. *Id.* at 297. Because we find Spencer was not in custody, we also do not need to reach the issue of whether private security personnel must follow the requirements of *Miranda.*

ed States Supreme Court held even though Murphy was at a meeting he was required to attend and during which he was required to answer questions truthfully, he was not in custody when he answered his probation officer's questions. *Id.* at 431, 104 S.Ct. at 1144.

In *State v. Budke,* 372 N.W.2d 799 (Minn.Ct.App.1985), Budke, a high school student, was asked to come to the principal's office to speak with a sheriff's investigator. Finding the principal's office was no more restrictive than the probation officer's office in *Murphy* or the police station in *Mathiason,* this court held Budke was not in custody because restrictions placed on him did not amount to restraint on freedom associated with formal arrest. *Id.* at 802.

The security office in this case is no more restrictive than the principal's office in *Budke,* the probation officer's office in *Murphy,* or the police station in *Mathiason.* We therefore find the taped interview did not amount to a restraint on Spencer's freedom of movement associated with formal arrest.

Perhaps the most important circumstance in determining whether Spencer was in custody is the fact that after the taped interview, he left the office. While this fact may not be dispositive, it corroborates the other evidence which suggests that Spencer was not in custody when he made the various statements to the investigators.

■ 2. Despite our conclusion that Spencer was not in custody for *Miranda* purposes, the trial court will not be reversed unless "the error will have a critical impact on the outcome of the trial." *Joon Kyu Kim,* 398 N.W.2d at 544. The *Joon Kyu Kim,* the court stated:

> Critical impact has been shown not only in those cases where the lack of the suppressed evidence completely destroys the state's case, but also in those cases where the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution.

*Id.* at 551.

We find suppression of Spencer's statements will have a critical impact on the outcome of the trial because they are the only statements in which Spencer admitted that the electrical device was his. Otherwise, all defense counsel needs to do to raise a reasonable doubt, and thus get an acquittal, is to suggest in final argument that some other jockey could easily have "planted" the device in Spencer's readily accessible maroon bag. Without the suppressed statements, the state would have no means of refuting such an argument. This significantly reduces the likelihood of a successful prosecution.

**DECISION**

Spencer was not "in custody" within the meaning of *Miranda* because he was not arrested, nor was his freedom of movement restricted in a manner associated with formal arrest. Because Spencer's statements will have a critical impact on the outcome of the trial, the portion of the court's order suppressing Spencer's statements is reversed.

Reversed.

CRIPPEN, Judge, concurring specially.

The trial court properly concluded that appellant was taken into custody by security officers. The court was not at liberty, however, to extend the law on *Miranda* warnings to questioning by private security officers.

**a. Custody.**

Security investigator Harr confronted appellant on premises where both men were employed. Harr's questions to appellant produced incriminating admissions, and it is evident that appellant knew at that point that his problem was "something big." Harr summoned security officer Wagner to take appellant to a security office and to stay with him. While so escorted, and during subsequent questioning by Wagner, Harr and a third security officer, the trial court found appellant "reasonably believed his freedom of action was restricted." Thus, the court found appellant was taken into custody by Wagner and remained in custody until questioning was concluded.

The trial court properly concluded that appellant was significantly deprived of his freedom and subjected to custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *State v. Palm*, 299 N.W.2d 740, 741 (Minn.1980). The restraint on appellant's freedom of movement was of the degree associated with formal arrest. *Minnesota v. Murphy*, 465 U.S. 420, 430, 104 S.Ct. 1136, 1143–44, 79 L.Ed.2d 409 (1984) citing a quotation from *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 713–14, 50 L.Ed.2d 714 (1977).

### b. Private questioning.

The decision in *Miranda v. Arizona* was directed at questioning by law-enforcement officers. *State v. LaRose*, 286, Minn. 517, 518, 174 N.W.2d 247, 248 (1970). *See Miranda*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). There are understandable distinctions between trained security officers with uniforms and badges and the untrained individual who made the citizens arrest in *LaRose*. Neither the trial court nor this court, however, should act on those distinctions absent recognition of their significance by the Minnesota Supreme Court.

I concur that the trial court's decision must be reversed.