**C.W.C.S., a Child Under Eighteen**

v.

**COMMONWEALTH of Kentucky.**

No. 2007–CA–002040–DG.

Court of Appeals of Kentucky.

March 20, 2009.

Timothy G. Arnold, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General, Heather M. Fryman, Assistant Attorney General, Frankfort, KY, for appellee.

Before LAMBERT and VANMETER, Judges; KNOPF,[1] Senior Judge.

LAMBERT, Judge.

C.W.C.S., a child under eighteen, and the appellant herein, appeals from the Powell District Court's order denying his motion to suppress incriminatory statements and from an order denying his motion to strike his juvenile sexual offender evaluation. For the reasons stated herein, we affirm.

C.W.C.S. was fourteen years old and a student at the Powell County Middle School when his younger brothers accused him of forcing them to perform oral sex on him. On November 17, 2006, Detective Tim Gibbs and Teresa Brand, a representative from the Cabinet for Health and Family Services, went to the middle school to interview C.W.C.S. about the allegations. Detective Gibbs and Ms. Brand went to the office and a school official went to get C.W.C.S. from class. C.W.C.S. was taken to the school counselor's office where Detective Gibbs and Ms. Brand were waiting.

According to the district court, C.W.C.S. did not have a guardian present and was alone with Detective Gibbs and Ms. Brand. Detective Gibbs identified himself as a police officer, although he was not in uniform but was wearing a gun and badge. Before any questions were asked, Detective Gibbs told C.W.C.S. that he did not have to speak with him or answer any questions and was free to return to class. Detective Gibbs explained that if C.W.C.S. refused to

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

speak with them, he and Ms. Brand would leave the school premises. C.W.C.S. said he was willing to speak with them. Detective Gibbs did not read C.W.C.S. his *Miranda* rights at any time. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The questioning lasted approximately twenty minutes, during which time C.W.C.S. made incriminating statements. At the end of the questioning, Detective Gibbs and Ms. Brand left the school, and C.W.C.S. returned to class. He was arrested later that day and charged with two counts of sodomy in the first degree.

Shortly after arraignment, C.W.C.S. moved to suppress the unrecorded incriminating statements made during the interrogation at the school, arguing that he was in custody for *Miranda* purposes and as such his statements were inadmissible. C.W.C.S. claimed he was in custody because he was not free to leave the school during school hours, and that neither he nor any other fourteen-year-old boy would have felt free to leave a closed room and walk out on the police. The district court rejected these arguments, finding that whether or not he was free to leave the school was not relevant to a determination of whether *Miranda* applied. The court found that the issue was instead whether C.W.C.S. was in police custody at the time and the court found that he was not.

C.W.C.S. entered a conditional guilty plea to the charges, which were amended to two counts of sexual misconduct, class A misdemeanors under Kentucky Revised Statutes (KRS) 510.140. His plea was conditional upon his right to appeal the district court's ruling on his motion to suppress his statements to Detective Gibbs and Ms. Brand. Since C.W.C.S. was over the age of thirteen and had admitted guilt to two misdemeanor sexual offenses under KRS 510, the district court ordered that a juvenile sex offender evaluation be performed by the Department of Juvenile Justice (DJJ) to aid the court in determining whether to declare C.W.C.S. a juvenile sex offender.

The report, which was filed with the court on May 8, 2007, found that C.W.C.S. was at moderate to high risk to reoffend. On June 26, 2007, the district court committed C.W.C.S. to the DJJ as a juvenile sex offender. C.W.C.S. moved to suppress the DJJ report, arguing that it was prepared by an unlicensed DJJ employee who had only reviewed two documents and had not spoken with his family members or his counselor.

The Commonwealth called the evaluator who conducted the DJJ evaluation. She testified that she had been a DJJ employee for seven years and that her qualifications included a bachelor's degree in social work, a master's degree in counseling, and continuing education through DJJ which included a two-week course on preparing evaluations of juvenile sexual offenders. While she was not individually qualified to perform psychological diagnosis, she worked under the supervision of a licensed psychologist at DJJ who read and approved her report.

The report included two instruments considered standard in preparing juvenile sexual offender assessments (JSOA): the JSOA and Estimate of Risk of Adolescent Sexual Offense Recidivism (ERASOR). These instruments are to be used in conjunction with other information to reach a clinical judgment. Additionally, the evaluator reviewed C.W.C.S.'s records and spoke with school employees, his paternal grandmother, mother, social worker, school employees, and Detective Gibbs. The report was reviewed by a licensed psychologist before it was submitted to the court.

The court granted a continuance following the evaluator's testimony and sought information from the counselor working with C.W.C.S., which indicated that C.W.C.S. was denying the sexual abuse despite having admitted it to the court. The district court then denied C.W.C.S.'s motion, committed him to DJJ, and placed him in the least restrictive inpatient sexual offender treatment program available.

C.W.C.S. then sought review by the Powell Circuit Court, which found that the district court's decisions were supported by substantial evidence and affirmed. This Court granted discretionary review and C.W.C.S. now asks this Court to consider three central issues.

■ First, C.W.C.S. argues on appeal that he was in custody for purposes of *Miranda* and that the district court erred in denying his motion to suppress the incriminating statements made during his interview. Particularly, C.W.C.S. asks this Court to determine the standard for when a child, particularly a young teenager, is in custody for purposes of *Miranda* and to determine to what extent the fact that a child is interviewed at school during school hours influences that decision.

The trial court's conclusion that C.W.C.S. was not in custody at the time that his statements were made is an issue of mixed law and fact that is reviewed *de novo*. *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky.2006). The trial court's findings of fact are binding so long as they are supported by substantial evidence. Kentucky Rules of Criminal Procedure (RCr) 9.78; *Harris v. Commonwealth*, 793 S.W.2d 802, 804 (Ky.1990). We find nothing in the record that indicates that the trial court's findings of fact were inaccurate or incomplete. The findings are taken directly from the testimony presented at the suppression hearing and the circuit court properly refused to disturb these findings. Accordingly, they are not appropriately disturbed on appellate review, and we will proceed with a *de novo* review of the legal issues C.W.C.S. presents.

■ Kentucky courts have consistently interpreted Section Eleven of the Kentucky Constitution to be coextensive with the Fifth Amendment of the U.S. Constitution. *E.g.*, *Commonwealth v. Cooper*, 899 S.W.2d 75, 78 (Ky.1995). In *Miranda*, the United States Supreme Court held that the prosecution may not use statements:

> whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of activity in any significant way.*

*Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. (emphasis added). It has always been held that the *Miranda* warning is not necessarily required absent the prerequisite of custodial interrogation. We agree with the Commonwealth that C.W.C.S's assertion that he was in custody while he was at school confuses physical custody with police custody as it is defined in *Miranda*. "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528–29, 128 L.Ed.2d 293 (1994) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (*per curiam*)). The

determination is based on objective circumstances, not the subjective belief of the defendants or the officers. *Stansbury,* 511 U.S. at 323, 114 S.Ct. at 1529. The court must "examine all of the circumstances surrounding the interrogation" and the relevant inquiry is how a reasonable person in the suspect's position would have understood the situation. *Id.* at 322, 114 S.Ct. 1526.

C.W.C.S. argues that a reasonable person in his position would have believed he was not free to leave the interrogation because it was taking place in school, a place he was required to be during school hours. If we were to adopt his reasoning, we would essentially be holding that every child that is attending school experiences a restriction of movement akin to an arrest. That is simply not the case. We do not see how C.W.C.S.'s freedoms were any more restricted than any other student at the school. Detective Gibbs directly stated that C.W.C.S. did not have to speak with them, that he was free to return to class, and that the officers would leave the school premises if he so chose. Thus, he was told that he was voluntarily speaking with them, and it was clear he was not in police custody at this time. Since his movements were not restricted in a degree associated with arrest, C.W.C.S. was simply not in custody for *Miranda* purposes.

Other jurisdictions have held that a juvenile interviewed in school is not *per se* in custody simply because he or she happens to be at a school facility. *See State ex rel. Juvenile Dept. of Multnomah County v. Loredo,* 125 Or.App. 390, 865 P.2d 1312 (1993) (Court held that child was not in police custody for *Miranda* purposes because officer told child that he could leave and the school policy was to allow students to refuse interviews with officers); *see also State v. Budke,* 372 N.W.2d 799 (Minn.Ct. App.1985) (interview of eighteen-year-old suspect at school principal's office did not amount to a custodial interrogation).

C.W.C.S. asks this Court to compare the situation in the case at bar to cases in which courts have held that defendants in custody for one offense were in custody for purposes of *Miranda. See Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). We agree with the Commonwealth that those cases are distinguishable from the case at bar. Inmates have been arrested and are incarcerated due to allegations stemming from criminal offenses. They are not free to move around within the facility and may not leave the facility at the end of the day. We decline to hold that students at school are comparable to jail and prison inmates for purposes of *Miranda.*

C.W.C.S. also compares the case at bar to cases such as *Welch v. Commonwealth,* 149 S.W.3d 407 (Ky.2004), wherein the Kentucky Supreme Court held that statements made by a child in a juvenile sex offender treatment program were made while the child was in custody under *Miranda.* Again, we find that a juvenile sex offender treatment program is akin to a juvenile detention facility, and that children are there as a result of adjudications, not simply to receive an education.

Because C.W.C.S. was told he was free to leave and not required to discuss the sexual misconduct allegations, we hold that he was not in custody and no *Miranda* warnings were required. Thus, the district court properly denied C.W.C.S.'s motion to suppress his incriminating statements made during the school interview.

Second, C.W.C.S. argues that the district court erred when it admitted the juvenile sexual offender evaluation during the disposition proceeding in his case and asks this court to determine who qualifies as a "qualified professional approved by the [sex offender treatment] program" un-

der KRS 635.510(3). Because C.W.C.S. raises questions of law, our review is again *de novo*. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky.App.2001). *See also A & A Mechanical, Inc. v. Thermal Equipment Sales, Inc.*, 998 S.W.2d 505, 509 (Ky.App. 1999); *Aubrey v. Office of the Attorney General*, 994 S.W.2d 516, 518–19 (Ky.App. 1998); and *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky.App.1998).

■ KRS 635.505(2) defines a juvenile sexual offender as:

an individual who was at the time of the commission of the offense under the age of eighteen (18) years who is not actively psychotic or mentally retarded and who has been adjudicated guilty of or has been convicted of or pled guilty to:

(a) A felony under KRS Chapter 510;

(b) Any other felony committed in conjunction with a misdemeanor described in KRS Chapter 510;

(c) Any felony under KRS 506.010 when the crime attempted is a felony or misdemeanor described in KRS Chapter 510;

(d) An offense under KRS 530.020;

(e) An offense under KRS 530.064(1)(a);

(f) An offense under KRS 531.310; or

(g) A misdemeanor offense under KRS Chapter 510.

KRS 635.510(1) states that "[a] child thirteen (13) years of age or older at the time of the commission of the offense, shall be declared a juvenile sexual offender if the child has been adjudicated guilty of an offense listed in KRS 635.505(2)(a), (b), (c), (d), (e), or (f)." C.W.C.S. was charged with sodomy but pled guilty to two counts of sexual misconduct, class A misdemeanors. Class A misdemeanors are not included in KRS 635.505(2)(a), (b), (c), (d), (e), or (f). Thus, C.W.C.S.'s plea bargain prevents the application of the mandatory language in KRS 635.510(1). However, KRS 635.510(2)(b) states that "[a]ny child, thirteen (13) years of age or older *may* be declared a juvenile sexual offender if the child has been adjudicated guilty of an offense listed in KRS 635.505(2)(g)." (emphasis added). Given the language of these statutes, the district court expressly had discretion to declare C.W.C.S. a juvenile sexual offender.

■ In order to aid the district courts in making appropriate determinations when the designation of juvenile sexual offender is permissive rather than mandatory, the legislature has required the courts to utilize a JSOA. *See* KRS 635.510(3). The Supreme Court of Kentucky has held that this procedure is one of disposition (akin to sentencing for an adult) rather than part of the adjudication process. *W.D.B. v. Commonwealth*, 246 S.W.3d 448 (Ky.2007). In considering the validity of instruments used to assess a juvenile as part of the JSOA, the Court stated that the assessments are not used for "adjudicatory purposes" as the juveniles are adjudicated before the assessments are ordered. *Id.* at 458. Instead of being affirmative evidence of guilt, the assessments are used to guide the district court in determining the proper disposition.

■ Juveniles who are designated as juvenile sexual offenders are "committed to the custody of the Department of Juvenile Justice and shall receive sexual offender treatment." KRS 635.515(1). C.W.C.S. takes issue with the qualifications of the evaluator who conducted his JSOA. As stated above, the record indicates that the evaluator was approved by the DJJ and had been preparing JSOAs for seven years. She had a bachelor's degree in social work and a master's degree in counseling. In addition to her education, she received ongoing training provided by the

DJJ, and her work was reviewed and approved by a licensed DJJ psychologist.

KRS 635.510(3) requires that the juvenile sexual offender assessment be performed by a "qualified professional approved by the program." C.W.C.S. asks this court to declare that the JSOA evaluator should always be a licensed practicing psychologist. Initially, we note that the statute does not require a psychologist to perform the assessment and instead clearly states that the evaluator simply be approved by the DJJ. Further, in a similar case, the Supreme Court of Kentucky found no fault with the qualifications of a JSOA evaluator who held a master's degree in the field and reviewed her findings with a licensed psychologist. *W.D.B.*, 246 S.W.3d at 457. While the qualifications of the evaluator were not specifically at issue in that case, the Court directly stated that the trial court did not need to conduct a *Daubert* hearing to test the scientific validity of a JSOA, since the assessment was not evidence of guilt and instead was used for sentencing or disposition purposes. As such, the court found that the opportunity for cross-examination provided at the disposition was sufficient to protect a juvenile's due process right. The trial court is always free to reject an opinion that it deems questionable or inaccurate.

We agree with the Commonwealth that the district court did not err in admitting the JSOA performed by the evaluator in this case. We decline to hold that the JSOA must be performed by a licensed psychologist, as that would be reading language into the statute that simply is not there. Because the JSOA is part of the disposition, akin to sentencing for adults, the district court has wide discretion in determining what is the appropriate sentence and detention facility for a defendant. It is not the place of this Court to disturb the court's sentencing absent a clear abuse of discretion.

Third, C.W.C.S. argues that the district court abused its discretion in declaring him a juvenile sex offender, arguing that the evidence showed that he was doing well in treatment at home. We find this argument completely unpersuasive, as the evidence shows that C.W.C.S. was not making progress in his counseling and immediately after being placed in his grandmother's care, committed contempt of the court by constructing a weapon and getting expelled from school. A trial court has wide discretion in sentencing, and sentencing decisions are only reviewed for an abuse of that wide discretion. *Murphy v. Commonwealth*, 50 S.W.3d 173 (Ky.2001). As stated above, the district court had discretion based on C.W.C.S's offenses to declare him a juvenile sex offender. The court's decision to do so was based on statutory provisions and substantial evidence and should not be disturbed on appeal.

For the foregoing reasons, we affirm the Powell Circuit Court's judgment affirming the order of the Powell District Court.

ALL CONCUR.